# Exhibit 1

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>7325 S. Potomac Street<br>Centennial, Colorado 80112 | |
| LAKESHORE VILLAGE HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff,<br><br>GENERAL STAR INDEMNITY COMPANY, a corporation,<br><br>    Defendant. | Case No.: |
| Attorneys for LAKESHORE VILLAGE HOMEOWNERS ASSOCIATION:<br><br>Christopher N. Mammel, Esq., #10980<br>Merlin Law Group, P.A.<br>1001 17th Street, Suite 1150<br>Denver, Colorado 80202<br>Telephone: (720) 665-9680<br>Facsimile: (720) 665-9681<br>E-mail: cmammel@merlinlawgroup.com | Division: |
| **COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH BREACH OF CONTRACT, AND STATUTORY UNREASONABLE DELAY/DENIAL** | |

Plaintiff, Lakeshore Village Homeowners Association ("Lakeshore"), by and through its undersigned attorneys, for its Complaint seeking relief for breach of contract, bad faith breach of contract, and statutory unreasonable delay or denial pursuant to C.R.S. §§ 10-3-1115 and 1116 against Defendant General Star Indemnity Company ("General Star"), states as follows:

## THE DISPUTES BETWEEN THE PARTIES

1. In this action related to insured property damage resulting to Lakeshore's property as a result of a hail and wind storm on August 14, 2018, its insurance carrier, General Star Indemnity Company has delayed its investigations of the loss and damages such that nearly four years have passed after the date of loss and notice to it of the storm damage without a final claim

decision or full payment. General Star has retained biased and poorly-qualified inspectors to conduct a superficial investigation of the loss, without proper or reasonable supervision to assure compliance with General Star's obligations under the policy to indemnify Lakeshore's losses. Until the reasonable scope of repair of the loss and damage is determined, and full actual cash value benefits are made available to the insured for use in reconstruction and repairs, a contractor cannot be retained to bid and undertake repairs, and repairs cannot even be commenced. Additionally, by virtue of its inordinate delays in investigation and adjusting, General Star has willfully or recklessly breached its duties of good faith owed under the insurance policy, and unreasonably delayed and/or denied payment of benefits in violation of C.R.S. §§ 10-3-1115 and 1116.

## GENERAL ALLEGATIONS

2. Lakeshore is a community association incorporated as a not-for-profit corporation in the State of Colorado. Among other lawful functions, Lakeshore is responsible to manage, maintain, and insure the buildings, common and limited common elements of the property located at 4835 South Balsam Street, Littleton, Colorado 80030.

3. Defendant General Star is a property and casualty insurance company.

4. General Star issued to Lakeshore Policy Number IAG967350 with effective dates of coverage from May 5, 2018 through May 5, 2019 (the "Policy"). Lakeshore attaches hereto a certified true and correct copy of the policy as Ex. A.

5. On or about August 14, 2018, while the Policy was in full force and effect, Lakeshore's insured property was damaged as a result of a hail and wind event and ensuing losses. Lakeshore duly and timely notified General Star of its loss, and claim no. G10047068 was assigned (the "Claim").

6. This Court has subject matter and personal jurisdiction over the parties to this cause of action. The amount in controversy exceeds $30,000, exclusive of interest and costs.

7. Venue is proper pursuant to Colo.R.Civ.P. 98 because it is the venue in which the cause of action accrued and where the insured property in question is located.

8. Following notice of the loss and assignment of a claim number, General Star assigned the claim to Matt Holberton, an independent adjuster with D'Brook & Co., to investigate the loss. General Star also retained consultant Joseph Shahid with Applied Building Sciences (an engineering firm) to conduct an investigation of the loss. In his Report, Mr. Shahid speculated that hail damages occurred at the property on or about July 28, 2016, outside of the General Star policy period, though he also identified hail damage that had occurred on or about the date of loss in 2018, during the policy period. Shahid also applied a standard for covered damage requiring what he considered to be "functional damage" rather than the standard of the policy to indemnify all "physical damages." Ignoring the finding of damages during the policy period, on March 13, 2019, Anthony Colucci, then a Vice President of General Star

Management Company ("Colucci"),[1] notified Lakeshore that its claim was denied and that General Star would be closing its file.

9. On April 1, 2019, Lakeshore's representative wrote Mr. Colucci requesting information and any reports that would allow Lakeshore to evaluate how General Star reached its conclusion that the date of loss was two years prior to the date of loss reported by Lakeshore.

10. After nearly two months of no response, on May 29, 2019, Matt Holberton emailed Lakeshore's representative and informed him that the questions posed in his April 1, 2019 correspondence were unrelated to the issue and that General Star would continue to review the file, but would nonetheless maintain the decision to deny the claim.

11. On June 28, 2019, Colucci formally responded to Lakeshore's April 1, 2019 letter, reaffirming General Star's decision to deny Lakeshore's claim and that the file would be closed. Colucci also requested, "if you are in possession of any expert findings that refute the findings of Mr. Shahid and General Star, please provide such findings to General Star for further review as desired."

12. On July 4, 2019, Lakeshore's representative wrote a detailed letter to Colucci, pointing out the errors and contradictory conclusions made in Applied Building Science's report, and requested a response. This correspondence also pointed out that General Star's policy clearly and explicitly supplied coverage for damages that were determined to not be "functional," contrary to the standard used by Mr. Shahid. The findings requested of Lakeshore and supplied by its representative were ignored. No response was received.

13. On August 13, September 18, 2019 and October 8, 2019, Lakeshore's representative wrote to Colucci again requesting a response to the July 4, 2019 letter. No response was received.

14. On March 19, 2020, Lakeshore's representative wrote a detailed thirty-one page letter to Colucci, explaining the errors in General Star's positions regarding the claim, including but not limited to the incorrect conclusions reached based on the forensic weather data in the Applied Building Sciences report, and provided documentation supporting Lakeshore's position. This correspondence included Lakeshore's initial and estimated partial proof of loss statement.

15. For nine months (277 days) between July 4, 2019 and April 6, 2020, General Star

---

[1] According to General Star's website (https://www.generalstar.com/claims/claim-contacts.html)at the time of the claims investigation, Mr. Colucci was a Vice President with General Star Management Company's claim division. Additionally, according to Mr. Colucci's LinkedIn profile(https://www.linkedin.com/in/anthony-colucci-esq-a8b444a7/), Mr. Colucci is an attorney that has attained the following advanced insurance industry designations: Chartered Property Casualty Underwriter ("CPCU"); Associate in Claims ("AIC"); Associate in Claims-Management ("AIC-M"); Accredited Adviser in Insurance ("AAI"); Accredited Adviser in Insurance-Management ("AAI-M"); Associate in Commercial Underwriting ("AU"); Associate in Commercial Underwriting-Management ("AU-M"); Associate in Insurance Services ("AIS"); Associate in Management ("AIM"); Associate in Marine Insurance Management ("AMIM"); Associate in Personal Insurance ("API"); Associate in Reinsurance ("ARE"); Associate in Risk Management ("ARM"); Associate in Risk Management-ERM ("ARM-E"); Associate in Risk Management-Public Entity ("ARM-P"); Associate in Surplus Lines Insurance ("ASLI").

ignored Lakeshore's requests to continue to adjust the claim, failing to respond to any of the Insured's letters, emails, phone calls or factual evidence. Finally, in April of 2020, after Lakeshore's representative submitted two letters to senior executives at General Star urging them to intervene since Colucci had refused to communicate with Lakeshore, General Star representative Brad Thompson wrote a letter to Lakeshore's representative informing him that the supporting documentation had been received and that it would be reviewed.

16. General Star retained an engineer from Nelson Forensics to reinspect the property and investigate the loss, and a report was issued on November 16, 2020 that concluded, similar to Mr. Shahid, that hail damages were primarily the result of storm events in 2016 and 2018, however, the "contribution from any one storm event is undetermined." At this point, after having received similar conclusions from two separate consultants a year and a half apart that each confirmed that hail damages may have occurred at the site during General Star's policy period, Colucci acknowledged during a telephone conversation in November that Lakeshore's loss was covered. However, General Star did not formally acknowledge in writing that Lakeshore's claim was covered for *another* six months, waiting until May 5, 2021. This determination was finally made two and a half years after the loss had been reported.

17. In October of 2021, General Star utilized a scope of repairs prepared based on Nelson Forensic's standard of determining whether hail damage would "affect the performance or service life of [damaged] elements" rather than the standard of "physical damage" insured by the policy. In response, in December of 2021, Lakeshore's representative raised concerns regarding the scope of repairs and requested that General Star correct its obvious errors. For more than one year, General Star ignored Lakeshore's concerns regarding the scope and eventually issued an actual cash value payment for some of its omissions. However, even after Lakeshore's representative continued to point out deficiencies in General Star's scope, no efforts have been made by General Star to correct its errors.

18. General Star's estimate fails to comply with even the minimum requirements of the prevailing building codes (the law), for example, the necessary requirements to comply with the International Building Code ("IBC"), to include Chapter 33 (Safeguards During Construction). These requirements outline the minimum requirements for safety, health and the general welfare of the public, the occupants of Lakeshore, in addition to a reasonable level of safety of fire fighters and first responders.

19. General Star's refusal to account for these minimum standards of the law would require Lakeshore to accept a repair methodology that is inconsistent with the policy benefits General Star sold; even more importantly, it requires Lakeshore to break the law and take the risk of serious adverse outcomes from that misconduct, including putting the lives and health of its unit owners and tenants at risk, and ultimately coerces them to be complicit in a crime in order to receive some, but inadequate, benefits under the policy.

20. General Star's scope of repairs utilizes inaccurate "trade labor rates", which undervalues the loss, in contradiction to the training of the estimating software provider Xactware. This misrepresentation of trade labor rates by General Star and would require Lakeshore's contractors to utilize improper rates for workers comp insurance for the laborers that

perform the repair work. Similar to the evasion of Chapter 33 of the IBC, General Star refused to compensate Lakeshore under the policy unless it used a contractor or employer that would improperly characterize the work they do in order to minimize their Workers Compensation Rates, which is considered to be committing Premium Fraud as defined by the Colorado Department of Labor and Employment ("CDLE").[2]

21. General Star's estimate failed to account for the necessary repairs it identified as necessary for replacement of windows and the ensuing damages that will occur as a result of that process. In revisions made to its scope of repairs in April 2022, General Star included substandard repairs to the interiors, despite having never inspected a single unit interior in the year and a half since this omission was initially raised by Lakeshore representatives.

22. General Star's scope of repairs entirely omits the appropriate replacement of ground mounted HVAC/Mechanical units. General Star was provided a detailed report from a highly credentialed Mechanical Engineer confirming these units were damaged by the insured storm and are not repairable, cannot be "combed" and must be replaced. General Star has not provided any explanation or evidence of a disagreement or error by Lakeshore's representatives or its Mechanical Engineering expert. General Star relied solely upon the unsubstantiated representations of a representative of its construction consultant – who is not a mechanical engineer. Despite requests by Lakeshore representatives, General Star continues to refuse to provide a factual basis for its scope of repairs or disagreement as to the scope of repairs identified by Lakeshore's mechanical engineer.

23. For more than one year, General Star ignored Lakeshore's concerns regarding the scope and eventually issued a partial actual cash value payment for some of its omissions. However, even after Lakeshore's representative continued to point out deficiencies in General Star's scope, no efforts have been made by General Star to correct its errors. Lakeshore's representatives provided detailed annotated diagrams and supporting photos of all observed damages, to every elevation of the Lakeshore community on February 15, 2021. *See* inserted examples below:

[REMAINDER OF THIS PAGE LEFT BLANK]

---

[2] *See* link to CDLE Workers Compensation Fraud Investigations web page below: https://cdle.colorado.gov/workers-compensation-fraud-investigations.


## FIRST CLAIM FOR RELIEF
## BREACHES OF CONTRACT

24. Lakeshore re-alleges ¶¶ 1 to 23 as though fully set forth herein.

25. Under Colorado law, the policy, like every contract, contains an implied covenant of good faith and fair dealing in interpreting and applying its provisions.

26. Pursuant to the Policy, General Star has a contractual obligation to investigate, adjust and pay the full amount of Lakeshore's damages from the insured event, including the costs to repair and/or replace the damage.

27. General Star breached the Policy by, among other things:

    (a) failing to properly and timely adjust the loss with Lakeshore;

    (b) forcing Lakeshore to bring legal proceedings to determine the amount of the loss;

(c) failing to pay all benefits owed Lakeshore under the Policy;

(d) interfering with performance of the Replacement Cost Condition.

28. As an anticipated and direct result of General Star's actions, Lakeshore has:

(a) not received all Policy benefits owed to indemnify for the entire loss;

(b) incurred and will incur in the future costs related to the delays required to engage in litigation to obtain a determination of the amount of loss owed by Lakeshore to repair and/or replace the significant property damage from the storm;

(c) suffered and will continue to suffer incidental and consequential damages within the contemplation of the parties in the event of breach, including increased costs of repairs, potential deterioration of the property, and costs associated with investigation and proving the damages in order to force General Star to reverse its denial of the claim; and

(d) suffered and will continue to suffer by incurring other losses, including loss of pre-judgment interest, costs, and other losses.

**WHEREFORE**, Plaintiff, Lakeshore Village Homeowners Association, respectfully requests that this Court enter Judgment against Defendant General Star Indemnity Company for direct, incidental and consequential damages, costs, pre-judgment interest, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
## COMMON LAW BAD FAITH BREACH OF CONTRACT

29. Plaintiff re-alleges ¶¶ 1 through 28 as though fully set forth herein.

30. Under the insurance policy, General Star owes its insured, Lakeshore, a duty of good faith and fair dealing.

31. An insurer breaches its duty of good faith when it engages in unfair claim settlement practices.

32. Among other circumstances, General Star has committed unfair claim settlement practices breaching its duties of good faith by conduct including, without limitation:

(a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy it wrote and issued, included failing to respond to any of its Insured's letters, emails, phone calls or factual evidence for nine months and unreasonably continuing to deny coverage for more than a year and a half notwithstanding clear opinions from its experts that

7

      triggered coverage;

(b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, including to require reasonable evaluation of information provided by its Insured;

(c) Refusing to pay claims without having conducted a reasonable investigation based upon all available information, even when that information conflicts with General Star's determination of the claim or its financial interest in limiting payment of covered claims;

(d) Refusing to acknowledge, and purposely misstating the admissions of its own consultants that determine that a loss to its Insured during its policy period cannot be ruled out, and thereupon admitting coverage;

(e) Unreasonably delaying investigation and determination of the amount of Lakeshore's loss through refusing to acknowledge and evaluate the opinions of the experts and consultants it, as well as its Insured, retained to assist in investigation of the loss;

(f) Frustrating and interfering with compliance by Lakeshore with the Replacement Cost Benefit provision of the policy;

(g) Unreasonably delaying receipt of benefits owed its Insured and unreasonably denying benefits and refusing to determine the amount of the loss;

(h) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(i) Compelling its Insured to initiate litigation to recover amounts due under an insurance policy by offering substantially less than the amount ultimately to be recovered in actions brought by such insureds;

(j) Delaying benefits to its Insured by knowingly misinterpreting its own policy, including its Replacement Cost Benefit provision;

(k) Misrepresenting the terms and conditions of the Policy in an attempt to influence its Insured to settle for less than all benefits reasonably afforded under the Policy for the subject loss and damage;

(l) Failing to honor the provisions of the Policy voluntarily and refusing due performance, causing delays in payment of the benefits owed to Lakeshore;

(m) Encouraging and directing its claim representatives and consultants to engage in unfair claims settlement practices against its insured, including by failing to instruct and supervise preparation of reports and estimates ensuring compliance

with mandated standards of repairs or replacements, to coerce unwarranted compromises from its Insured that would place the Insured in violation of Colorado law.

33. General Star has committed such actions willfully or recklessly and with such frequency as to indicate a general practice.

34. As a direct and proximate result of General Star's actions, Lakeshore has:

(a) Incurred and will incur in the future increased costs to repair, restore and/or replace the significant property damage;

(b) Suffered and will continue to suffer foreseeable continuing damages, including costs associated with investigation and proving covered damages in order to force General Star to reverse its denial of the claim; and

(c) Suffered and will continue to suffer other expenses, including loss of the time value of the benefits owed, increased expenses to conduct repairs, attorneys' fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Lakeshore Village Homeowners Association, respectfully requests that this Court enter Judgment against Defendant General Star Indemnity Company for damages, costs, loss of the time value of the benefits owed, moratory interest, expert witness fees, and such other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### UNREASONABLE DELAY AND DENIAL IN VIOLATION OF
### C.R.S §§ 10-3-1115 and 1116

35. Plaintiff re-alleges ¶¶ 1 through 34 as though fully set forth herein.

36. Under Colo. Rev. Stat. § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

37. As alleged herein, measured against reasonable and objective industry standards for claim handling and payment, General Star's actions have unreasonably delayed and/or denied payment of available policy benefits to indemnify the loss and damage.

38. Additionally, as alleged herein, measured against reasonable and objective industry standards for claim handling and payment General Star has unreasonably denied benefits to Lakeshore by unilaterally imposing unreasonable conditions on the recovery of benefits.

39. Colo. Rev. Stat. § 10-3-1116 authorizes a first-party claimant, such as Lakeshore,

whose claim for payment of benefits has been unreasonably delayed and/or denied, to bring an action in a district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

**WHEREFORE**, Plaintiff Lakeshore Village Homeowners Association, respectfully requests that this Court enter Judgment against Defendant General Star Indemnity Company for the relief authorized pursuant to C.R.S. § 10-3-1116, including two times the Policy benefit, costs, attorneys' fees, expert witness fees, and such other and further relief as the Court deems just and proper.

**Plaintiff Demands a Jury Trial of All Issues So Triable**.

Dated this 7th day of July, 2022.

Respectfully submitted,

s/ Christopher N. Mammel
Christopher N. Mammel, No. 10980
Merlin Law Group, P.A.
1001 17th Street, Suite 1150
Denver, CO 80202
Telephone: (720) 665-9680
Facsimile: (720) 665-9681
Email: cmammel@merlinlawgroup.com

Attorneys for Lakeshore Village Homeowners Association.