## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02046-GPG-SBP

LAKESHORE VILLAGE HOMEOWNERS ASSOCIATION,

     Plaintiff,

v.

GENERAL STAR INDEMNITY COMPANY,

     Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR PROTECTIVE ORDER (ECF No. 44)

---

**Susan Prose, United States Magistrate Judge**

     This matter is before the court on Defendant General Star Indemnity Company's ("General Star") motion seeking a protective order, ECF No. 44 ("Motion for Protective Order" or "Motion"), after it was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 45. Generally, the Motion requests a court order relieving General Star of any obligation to provide additional responses to certain written discovery requests and protecting what General Star views as privileged and confidential materials identified in its privilege log, Exhibit B-2 to ECF No. 46 at 133-157 ("Privilege Log"). Plaintiff Lakeshore Village Homeowners Association ("the HOA") has filed a response, ECF No. 52 ("Response"). As part of its effort to resolve this dispute, the court has ordered in camera review of the documents covered by the Privilege Log. *See* ECF No. 64.

     For the reasons below, the court **GRANTS in part and DENIES in part** General Star's

Motion for Protective Order.

## BACKGROUND

### I.    Factual and Procedural History

#### A.    The Claim and General Star's Initial Investigation

This case involves a first-party insurance dispute regarding the HOA's claim for coverage under its policy ("Policy") with General Star. The HOA contends that hail from an August 14, 2018 storm damaged the roofs at its fifteen-building townhome complex located at 4385 South Balsam Street in Littleton, Colorado ("Property"). *See generally* ECF No. 3 ("Complaint"). The HOA submitted a claim under the Policy in November 2018 ("Claim"). *See* ECF No. 46 ("Appendix") at 5; Response at 1 n.1. General Star conducted an initial investigation, utilizing a third-party roof consultant as part of its investigation. That consultant provided two reports in February 2019 concluding that the damage to the Property was caused by a storm before the Policy went into effect. Appendix at 5-6. Relying on these reports, on March 13, 2019, General Star denied the Claim and advised the HOA in a determination letter that the damage to the Property was not covered under the Policy. *Id.* at 6, 12-14.

More than a year later, the HOA issued a demand letter dated March 19, 2020, ("Demand Letter") from its public adjuster, Derek O'Driscoll, seeking payment under the Policy in the amount of approximately $5 million. *Id.* at 16-47.[1] The Demand Letter accused General Star of wrongfully denying coverage under the Policy and asserted that "it is clear that General Star's conduct to this point has been unreasonable and in direct defiance of the Claims Handling

---

[1] General Star has provided a copy of the Demand Letter, Appendix at 16-47, but not the 10,070-page appendix accompanying it.

Standards set forth by the State of Colorado." *Id.* at 25, 39. The Demand Letter also called on

General Star to provide further support for its position that the damage to the Property was not

covered under the Policy, and it previewed the HOA's next steps if General Star did not

reconsider its position and take the actions set forth in the Letter. *Id.* at 32, 38; *id.* at 17 ("Absent

a meaningful and timely response from General Star, [the HOA] will seek legal counsel to advise

on its next steps in securing the coverage benefits owed to it as a result of this loss."); *id.* at 43

("[The HOA] intends to hold General Star accountable to the obligation to indemnify them for

[the expense of hiring a general contractor].").

General Star took the Demand Letter's various statements and overall tone as indications

that litigation might be imminent, prompting it to implement a litigation hold on April 8, 2020.

*Id.* at 6-7. On or about that same date, General Star retained Zelle LLP as outside legal counsel to

provide legal advice regarding coverage and legal matters raised in the Demand Letter and to

advise on the Claim more generally. *Id.* at 7. On or about April 17, 2020, the HOA requested that

General Star sign a tolling agreement extending the statute of limitations for any legal claim

based on General Star's handling of the Claim. *Id.* at 68-69. General Star agreed, and on April

24, 2020, the parties executed the first of four tolling agreements. *See id.* at 8, 113, 115, 117; *see

also id.* at 78-79, 102, 109.

**B.    The Letters and General Star's Additional Investigation**

Between April 2020 and April 2022, General Star sent a series of letters (at least seven of

which are at issue) as part of a back-and-forth negotiation over whether and the extent to which

General Star would cover the Claim. ECF Nos. 54-3 ("April 24, 2020 Letter"), 54-4 ("May 29,

2020 Letter"), 54-5 ("November 19, 2020 Letter"), 54-6 ("August 30, 2021 Letter"), 54-7

("October 8, 2021 Letter"), 54-8 ("March 15, 2022 Letter"), 54-9 ("April 21, 2022 Letter")

(collectively, "Letters"). Each of the Letters was signed by Anthony R. Colucci, General Star's

Vice President of its Claims Division. Appendix at 5, 7, 9; *see generally* Letters.

The first of these Letters laid out General Star's reasoning for why it had denied the

Claim. April 24, 2020 Letter at 1-2. General Star went on to ask the HOA—"in furtherance of

our good-faith effort to evaluate the existing dispute"—to permit Nelson Forensics, LLC

("Nelson"), a second engineer/roof consultant, to conduct an additional inspection of the

Property. *Id.* at 2. The April 24, 2020 Letter ended with General Star agreeing in principle to the

first tolling agreement. *Id.*

In its May 29, 2020 Letter, General Star responded to the HOA's requests that Nelson be

instructed on what the HOA viewed as the outstanding issues regarding the Claim. May 29, 2020

Letter at 1. General Star pushed back on these requests, stating that it did not retain Nelson for

purposes of determining coverage or adjusting the Claim but for its opinions on the nature,

cause, and extent of the damage to the Property, and the measures reasonably necessary to

remediate any damage caused by a storm during the Policy period. *Id.* at 2. General Star made

clear that it would then evaluate the Claim in light of Nelson's opinions. *Id.*

The next Letter came in November 2020. With that Letter, General Star provided a copy

of Nelson's report to the HOA and then informed it that General Star had brought on an

independent adjuster to solicit bids from several contractors.[2] November 19, 2020 Letter at 1.

These bids would be for repairs of all damage to the Property "potentially attributable to hail

---

[2] For further context, this independent adjuster worked with General Star's retained building
consultant, RMC Group, to obtain bids from local contractors. *See* August 30, 2021 Letter at 1.

(regardless of date sustained)." *Id.* General Star then agreed to another tolling agreement. *Id.*
at 1-2.

The fourth Letter was sent on August 30, 2021, in response to a complaint by the HOA
that one of the bidding contractors had made certain statements during a site visit to the
Property.[3] August 30, 2021 Letter at 2. Ultimately, General Star agreed to proceed with its
investigation and evaluation of the Claim without a bid from this particular contractor in an effort
"to demonstrate utmost good faith as its investigation, evaluation, and adjustment of the Claim
moves toward a conclusion." *Id.* Further, General Star agreed to pass along certain feedback
from the HOA to RMC Group regarding the scope of work to be bid on. *Id.*

The October 8, 2021 Letter informed the HOA that General Star had received bids for
repair work on the Property and intended to tender payment to the HOA in the amount of
$2,030,868.16 for this work. October 8, 2021 Letter at 2. The rest of the Letter explained how
General Star arrived at this amount. *Id.*

In the penultimate Letter, General Star provided further detail to support its position as to
the amount it had agreed to pay the HOA. March 15, 2022 Letter at 1-2, 10-11. It then defended
itself against complaints from the HOA that the contractor selected by General Star was not
qualified to perform the work on the Property, did not have sufficient jobsite safety guarantees,
and had improperly calculated labor rates. *Id.* at 2-4. The focus of the Letter, however, was to
respond to the HOA's complaints about the scope of repairs, *id.* at 5-10, and to defend the
decisions made by RMC Group and the contractor regarding the scope of repairs for roofing,
paint and siding, windows, HVAC, and garages. *Id.*

---

[3] It is unclear what was said during this encounter.

In the final Letter, General Star informed the HOA that it would authorize a supplemental payment of $222,419 after RMC Group had recalculated the total costs of the repair work based on the issues raised by the HOA. *See generally* April 21, 2022 Letter.

Ultimately, General Star tendered payments to the HOA of more than $3.25 million; however, the HOA insisted on the full amount of $5 million sought in the Demand Letter.[4] The parties participated in a private mediation on June 20, 2022, which did not result in a settlement. Appendix at 8. The HOA originally filed suit in a Colorado court on July 7, 2022, ECF No. 1-2, and General Star removed the case to this federal court on August 11, 2022. ECF No. 1.

## II.    Discovery

The present discovery disputes revolve around the role of James Holbrook III of Zelle LLP—General Star's retained outside counsel. The HOA questions whether Mr. Holbrook's actions on behalf of General Star were entirely legal in nature and asserts that he may have participated in the adjustment of the Claim. General Star remains steadfast in insisting that Mr. Holbrook's actions on behalf of the company were done purely in his capacity as an attorney. Mr. Colucci submitted a declaration averring that he and Brad Thompson—General Star's Vice President and Property Unit Manager for the Claims Division—performed all "ordinary business activities typically handled by a claims adjuster," which included: (1) "the gathering of factual information relating to the Claim"; (2) the review, approval, and issuance of all Claim-related correspondence to [the HOA]"; and (3) "the approval and issuance of all Claim-related payments to [the HOA]." Appendix at 9.

---

[4] In making these payments, however, General Star reserved all rights under the Policy. *See* October 8, 2021 Letter at 3-4.

Specifically at issue are General Star's responses to requests for admission ("RFA") and an interrogatory (collectively, "Written Discovery"), as well as redacted "activity notes" contained in General Star's internal file used to manage the Claim ("Claim File"). General Star maintains that this information and materials are not discoverable because they are irrelevant and protected by the attorney-client privilege, the attorney work-product doctrine, or both.

**Written Discovery**. The contested RFAs (#7-20) ask whether Mr. Holbrook authored or assisted in drafting the Letters. Appendix at 126-30. General Star objected to the RFAs on the grounds that they were vague, overbroad, sought information that was not relevant, and "seek information protected from disclosure by the attorney-client privilege and/or work-product doctrine." *Id.* at 125-130 (cleaned up). Interrogatory #10 is a follow-up to the RFAs, asking:

> If your response to any of the foregoing Requests for Admission is anything other than an unqualified admission, identify the facts presently known to support your response, all persons with knowledge of any fact set forth in your response, and all documents which reflect any such fact.

*Id.* at 130. General Star objected on the same grounds as it did the RFAs. *Id.* at 131.[5]

The HOA insists that these requests are proper, and in its Response, it asks that the Letters be produced in their native formats to allow it to identify those involved in their drafting and to gain insight into General Star's conduct while adjusting the Claim. Response at 12.

**Claim File**. General Star provided the HOA with a copy of the Claim File that includes redactions of materials it claims are privileged or otherwise protected from discovery. There are 61 entries on the Privilege Log, with each entry corresponding to an activity note in the Claim

---

[5] General Star also asserted that Interrogatory #10 included subparts that should have been made into separate interrogatories. Appendix at 131.

File with redactions. Each entry provides the Bates number(s), date of the activity note, author of the particular activity note, and a general description of the content of the redacted portions of the activity note. *See generally* Privilege Log. The HOA challenges the sufficiency of the Privilege Log, claiming that the descriptions of the activity notes are too vague to assess the validity of General Star's claims of privilege and work product.[6] Response at 3-4. Upon its own review of the Privilege Log, the court determined it was necessary to examine the unredacted Claim File and ordered General Star to turn over the relevant documents for in camera review. ECF No. 64.

## LEGAL STANDARDS

### I.    Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Relevance under Rule 26(b)(1) is "broadly construed," and a request is considered relevant "if there is 'any possibility' that the information sought may be relevant to any party's

---

[6] For purposes of the Motion, the HOA has narrowed the scope of materials it seeks from the Claim File to the activity notes corresponding with Entries 7-30, 32-37, 40-61. Response at 11.

claim or defense." *Byron-Amen v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02364-NYW,

2022 WL 1567563, at *2 (D. Colo. May 18, 2022) (quoting *Martensen v. Koch*, 301 F.R.D. 562,

570 (D. Colo. 2014)); *Brackett v. Walmart Inc.*, No. 20-cv-01304-KLM, 2021 WL 1749975,

at *3 (D. Colo. May 4, 2021) ("[R]elevance is not so narrowly construed as to limit a story to its

final chapter, and neither party is entitled to make it impossible for all meaningful parts of the

story to be told."). As for proportionality, "[t]he Advisory Committee Notes to the 2015

Amendments make clear that the party seeking discovery does not bear the burden of addressing

all proportionality considerations." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266,

275 (D. Colo. 2022) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment").

Generally, when the requested discovery appears relevant on its face, "the party resisting

discovery has the burden to establish the lack of relevance by demonstrating that the requested

discovery (1) does not come within the scope of relevance as defined under [Rule 26(b)(1)], or

(2) is of such marginal relevance that the potential harm occasioned by discovery would

outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*,

220 F.R.D. 354, 359 (D. Colo. 2004) (quotation omitted).

Rule 26(b)(2)(C) allows a court to limit discovery if it determines that: (1) the discovery

sought is unreasonably cumulative or duplicative, or may be obtained from some other source

that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has

had ample opportunity to obtain the information by discovery in the action; or (3) the proposed

discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(j)-(iii).

And "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance,

embarrassment, oppression, or undue burden or expense" from an otherwise relevant discovery

request. Fed. R. Civ. P. 26(c)(1). The party seeking such protection "has the burden of proof[.]"

*Stroup v. United Airlines, Inc.*, No. 15-cv-01389-WYD-CBS, 2016 WL 7176717, at *3 (D. Colo.

Sept. 16, 2016). "The burden is on the party resisting discovery or dissemination to establish that

the information sought should be subject to additional protection. To meet this burden, the

moving party must set forth specific facts showing good cause, not simply conclusory

statements." *Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME-MEH, 2007 WL 2438947, at *1 (D.

Colo. Aug. 23, 2007) (citation omitted).

Finally, "[d]iscovery rulings are within the broad discretion of the trial court, and [the

Tenth Circuit Court of Appeals] will not disturb them absent a definite and firm conviction that

the lower court made a clear error of judgment or exceeded the bounds of permissible choice in

the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL

2967692, at *7 (10th Cir. Apr. 17, 2023) (cleaned up, quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d

1373, 1386 (10th Cir. 1994)), *cert. denied*, 144 S. Ct. 696 (2024), *reh'g denied*, 144 S. Ct. 1088

(2024). "[T]he district court's determinations regarding waiver of attorney-client privilege and

work product protection" are reviewed "for abuse of discretion." *Harte v. Bd. of Comm'rs of

Cnty. of Johnson, Kan.*, 940 F.3d 498, 522 (10th Cir. 2019); *see also S.E.C. v. Merrill Scott &

Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of

discretion).

## II.    Attorney-Client Privilege

Because subject matter jurisdiction in this matter is premised on diversity jurisdiction,

Colorado law governs issues of attorney-client privilege. Fed. R. Evid. 501; *see also Frontier

Refin., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). Pursuant to Colo. Rev.

Stat. § 13-90-107(1)(b), "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment." Although now codified, "the privilege originated in the common law, and much of the common law jurisprudence pertaining to the privilege is retained." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009). The purpose of this privilege "is to secure the orderly administration of justice by insuring candid and open discussion by the client to the attorney without fear of disclosure." *Losavio v. Dist. Ct. In & For Tenth Jud. Dist.*, 533 P.2d 32, 34 (Colo. 1975).

"The attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Madera*, 112 P.3d 688, 690 (Colo. 2005) (citation and internal quotation marks omitted). The privilege "protects not only information and advice communicated from the attorney to the client, but also information given to the attorney to enable him to give sound and informed legal advice." *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). The privilege, however, "protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney." *Id.*

The attorney-client privilege "is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *Tucker*, 232 P.3d at 198. And "the privilege 'applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as

11

confidential.'" *Id.* (quoting *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). Thus, in order for the privilege to apply, the communication must both relate to the provision of legal advice and be made with the expectation of confidentiality.

Importantly, "[n]o blanket privilege for all attorney-client communications exists"; rather "the privilege must be claimed with respect to each specific communication and, in deciding whether the privilege attaches, a trial court must examine each communication independently." *Wesp*, 33 P.3d at 197. "The burden of establishing that a particular communication is privileged rests on the party asserting the privilege." *Id.* at 198.

## III.    Work-Product Doctrine

Attorney work product is protected by Rule 26(b)(3) and the principles of *Hickman v. Taylor*, 329 U.S. 495 (1947). *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 n.3 (10th Cir. 2006) (citing Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 479-81 (4th ed. 2001)). The work-product doctrine "is intended to provide a lawyer 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Martensen*, 301 F.R.D. at 572 (quoting *Hickman*, 329 U.S. at 510).

Rule 26(b) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "But, subject to Rule 26(b)(4), those materials may be discovered if (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(i), (ii). If the

court requires the disclosure of work-product protected materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Rule 26(b)(3)(B). Intangible attorney work product is protected under *Hickman*. *See, e.g.*, *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co, LLC*, No. 20-cv-00552-CMA-NRN, 2021 WL 1022703, at *4 (D. Colo. Mar. 17, 2021).

In *Hickman*, the Supreme Court "rejected 'an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections [of witness interviews] prepared or formed by an adverse party's counsel in the course of his legal duties.'" *In re Grand Jury Proc.*, 616 F.3d 1172, 1184 (10th Cir. 2010) (quoting *Hickman*, 329 U.S. at 510) (brackets in original). The doctrine recognizes "a strong public policy interest in protecting the "adversary trial process" by "shielding litigants' work-product from their opponents" and "by sheltering the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* (cleaned up) (citing *Hickman*, 329 U.S. at 510-11) (other citations omitted). The work-product doctrine thus is not technically "a privilege within the scope of Fed. R. Evid. 501, but rather 'a tool of judicial administration' that furthers the goals of fairness and convenience." *Martensen*, 301 F.R.D. at 572 (quoting *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 201 (M.D.N.C. 1988)).

The party seeking to invoke the work-product doctrine bears the burden of establishing that it attaches. *In re Grand Jury Proc.*, 616 F.3d at 1185. The court employ "a sequential step approach to resolving work product issues":

First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged.

Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like.

If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means.

Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL 6119962, at *12-13

(D. Colo. Oct. 15, 2020) (paragraph breaks added) (quoting *Martin v. Monfort, Inc.*, 150 F.R.D.

172, 172-73 (D. Colo. 1993)).

## IV.  Privilege and Work Product in Insurance Cases

In the context of insurance claims and investigations, "[n]ot every document drafted by

counsel or every communication with counsel is protected by the attorney-client

privilege." *Hurtado v. Passmore & Sons, L.L.C.*, No. 10-cv-00625-MSK-KLM, 2011 WL

2533698, at *4 (D. Colo. June 27, 2011) (citing *Nat'l Farmers Union Prop. & Cas. Co. v. Dist.

Ct.*, 718 P.2d 1044, 1049 (Colo. 1986) (hereafter, "*Nat'l Farmers Union*")). "For example, the

attorney-client privilege does not protect the results of a factual investigation conducted by

counsel relating to the origination of an insurance policy and the validity of a claim." *Colo.*

14

*Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649,

at \*3 (D. Colo. Apr. 2, 2013) (citing *Nat'l Farmers Union*, 718 P.2d at 1048-49); *accord*

*Cornhusker Cas. Co. v. Skaj*, No. 11-cv-110-S, 2012 WL 12541136, at \*2 (D. Wyo. Apr. 5, 2012)

(holding the work-product doctrine did not protect disclosure of the insurer's investigative file,

because doing so "would allow an insurance company to insulate all investigative materials

generated in every case involving serious injuries long before any coverage decisions are made

or threats of litigation arise"). Indeed, "if a lawyer is acting in an investigative capacity, and not

as a legal counselor, with reference to whether an insurance claim should be paid, then neither

the [attorney-client] privilege nor the work product privilege protects communications from a

lawyer to an insurance carrier." *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130

(Colo. App. 1998) (citing *Nat'l Farmers Union*); *accord Smith v. Marten Transp., Ltd.*, No. 10-

cv-0293-WYD-KMT, 2010 WL 5313537, at \*2-4 (D. Colo. Dec. 17, 2010) (holding that neither

the attorney-client privilege nor the work-product doctrine applied to communications by an

attorney acting as a claims investigator regarding a claim investigation or communications with a

witness).

Typically, claim investigations arising in the first-party context, like the claim at issue

here, are "made in the ordinary course of business and are discoverable[.]" *Weitzman v. Blazing*

*Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) ("When an insured presents a first party claim,

he is asking for payment under the terms of the insurance contract between him and the

insurance company, and the insurance company owes him a duty to adjust his claim in good

faith. There is no initial contemplation of litigation."). The roles of claim handler and attorney

are not mutually exclusive. *See W. Nat'l Bank of Denver v. Emp'rs Ins. of Wausau*, 109 F.R.D.

55, 57 (D. Colo. 1985) (noting that "investigations by a person who is an attorney but acting in

the capacity of an investigator and adjustor for the insurance company" resulted in the

preparation of an investigative file in the ordinary course of the insurer's business). The mere

fact that an attorney is involved in a communication or drafting does not automatically render

that communication or document subject to the attorney-client privilege or the work-product

doctrine. *See Perez v. Alegria*, No. 15-MC-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24,

2015), *report and recommendation adopted*, 2015 WL 4744480 (D. Kan. Aug. 11,

2015) (rejecting a blanket privilege objection for purposes of an attorney's deposition or

document discovery when the attorney was also a fact witness); *Heartland Surgical Specialty

Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLB-DWB, 2007 WL 625809, at *6 (D. Kan.

Feb. 23, 2007) (observing that the attorney-client privilege does not necessarily attach when an

attorney also performed duties as a consultant involved in competitive business activities and

decision-making).

## ANALYSIS

The court first addresses the disputes regarding the Written Discovery and then proceeds

to analyze the challenged portions of the Claim File. Lastly, the court will address the HOA's

request that the Letters be produced in their native formats.

## I.    Written Discovery

The RFAs and Interrogatory #10 ask whether Mr. Holbrook authored or otherwise

assisted in drafting the Letters. General Star insists that these inquiries are improper because they

seek information that is not relevant to the claims and defenses in this case and is both privileged

and protected by the work-product doctrine. The court will address each issue in turn.

**A.      Relevance**

As previously noted, relevance for purposes of discovery is broadly construed. *See Martensen*, 301 F.R.D. at 570. Here, the HOA brings claims of breach of contract and bad faith—both common law and statutory—under Colorado law. Complaint ¶¶ 24-39. Most pertinent for present purposes are the HOA's bad faith claims alleging that General Star unreasonably delayed its investigation and payment of the Claim and otherwise breached its duty of good faith. *Id.* ¶¶ 29-39.

In the typical insurance case, a breach of contract claim challenges an insurer's ultimate decision whether a policy covers an alleged injury or damage, whereas a bad faith claim places at issue how the insurer arrived at its decision. *See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) ("Bad faith breach of an insurance contract encompasses the entire course of conduct and is cumulative.") (citation omitted). Thus, when an insured brings a bad faith claim, the actions taken by an insurance company while investigating and evaluating a claim for coverage and the reasonableness of those actions are directly at issue. *See Gardner v. State Farm Mut. Auto. Ins. Co.*, 639 F. Supp. 3d 1158, 1163-64 (D. Colo. 2022) (noting that "both common law and statutory bad faith claims require a showing of unreasonable conduct") (citation and internal quotation marks omitted); *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) ("An insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances.").

The Written Discovery asks whether Mr. Holbrook authored or otherwise participated in the drafting of the Letters. The Letters were General Star's responses to correspondence from Mr. O'Driscoll, the HOA's public adjuster, and each summarizes the company's efforts to further

investigate the Claim. *See, e.g.*, April 24, 2020 Letter at 1-2; November 19, 2020 Letter at 1. The

Letters also detail General Star's plans to investigate the Claim further and contain

contemporaneous explanations for its decisions, including how it defined the scope of work to be

done at the Property and how it arrived at the amount it would pay the HOA. *See* May 29, 2020

Letter at 1-2; *see generally* October 8, 2021 Letter; March 15, 2022 Letter. In short, the Letters

were part of General Star's adjusting of the Claim. *See Menapace*, 2020 WL 6119962, at *7

(describing adjusting as including "investigation, gathering and summarizing information, and

valuation" of a claim); *Colo. Mills*, 2013 WL 1340649, at *4-5 (rejecting defendant's contention

that "coverage analysis" was not adjusting and finding investigation and evaluation of coverage

to be adjusting activities).

There is no question that the Letters are themselves relevant; however, the ultimate

question is whether Mr. Holbrook's role, if any, in drafting the Letters is relevant. Currently,

whether Mr. Holbrook was involved in preparing the Letters—and, if he was, the extent of his

involvement—are both unclear. However, as a matter of logic, if Mr. Holbrook is the sole author

of the Letters, including those portions that involve adjusting activities, then it follows that he

participated in the adjustment of the Claim, and his involvement is clearly relevant. *See Byron-*

*Amen*, 2022 WL 1567563, at *2 (discovery request should be permitted if there is "any

possibility" the information is relevant to any claim or defense).

Because the HOA is entitled to know who adjusted the Claim on General Star's behalf,

and because General Star's answers to the Written Discovery may reveal whether Mr. Holbrook

was involved in the adjusting of the Claim, the information sought is relevant.

### B.    Attorney-Client Privilege

Next, General Star maintains that whether Mr. Holbrook authored or helped draft the

Letters is protected by the attorney-client privilege. It makes two arguments in support of its

position: first, that answering the Written Discovery would reveal whether General Star held

privileged communications with Mr. Holbrook, Motion at 20-21, and second, that because the

topics of the Letters are already known, revealing Mr. Holbrook's involvement would necessarily

reveal the substance of any privileged conversation. *Id.* On both accounts, the court respectfully

disagrees.

As to General Star's first point, the mere fact that a party communicated with its attorney

for the purpose of receiving legal advice is not protected by the attorney-client privilege. *Guy v.

Whitsitt*, 2020 COA 93, ¶ 21, 469 P.3d 546, 551 (Colo. App. 2020) ("Merely disclosing the fact

that there were communications does not constitute a [waiver of the privilege]. The disclosure

must be of confidential portions of the privileged communications. *This does not include the fact

of the communication [or] the identity of the attorney*.") (cleaned up, emphasis added) (quoting

*Roberts v. Legacy Meridian Park Hosp. Inc.*, 97 F. Supp. 3d 1245, 1252-53 (D. Or. 2015)); *see

also Gresser v. Banner Health*, 2023 COA 108, ¶ 114, 543 P.3d 1059, 1083 (Colo. App. 2023),

*cert. granted in part on other grounds sub nom.*, *Health v. Gresser on behalf of C.G.*,

No. 23SC959, 2024 WL 4165511 (Colo. Sept. 9, 2024) ("[T]he court correctly determined that

the questioning regarding the time the witnesses spent with counsel, the materials the witnesses

reviewed with the lawyers, and the presence of others at the trial preparation sessions did not

implicate the attorney-client privilege.") (citing *Guy*, 469 P.3d at 551).

This conclusion is also dictated by the practical necessity of raising the attorney-client

privilege. To invoke the privilege, a party must necessarily acknowledge that privileged

conversations occurred. Evidence of this can be found here in General Star's Privilege Log,

where it represents that it engaged in privileged communications with Mr. Holbrook. *See

generally* Privilege Log; *cf. Kovacs v. Hershey Co.*, No. 04-cv-01881-WYD, 2006 WL 3054167,

at *3 (D. Colo. Oct. 25, 2006) ("The testimony by Mr. West that 'we just looked at the policy and

the policy states one record,' is no more than a general description of the subject matter of the

discussion, which would be required as part of any privilege log, and is too vague to constitute a

waiver of the attorney-client privilege.") (cleaned up).

Also unavailing is General Star's second argument that its answers to the Written

Discovery would reveal the substance of any legal advice Mr. Holbrook provided. At this stage,

the only question posed to General Star is whether Mr. Holbrook authored or assisted in drafting

the Letters. Crucially, the HOA (at least through the Written Discovery) has not asked for

specifics regarding Mr. Holbrook's involvement. For instance, the HOA has not asked General

Star to indicate what legal advice, if any, Mr. Holbrook offered during the drafting of the

Letters—an inquiry that would implicate the concerns General Star has raised.

At this point, General Star's concerns are premature. At most, General Star's responses

might suggest the *topics* on which Mr. Holbrook may or may not have offered legal advice.

Under the standards for attorney-client privilege set forth in federal law, it is well established that

the general topics of a conversation between an attorney and his or her client are not protected. *In

re CCA Recordings 2255 Litig. v. United States*, 337 F.R.D. 310, 326 (D. Kan. 2020) (noting that

"general topics of attorney-client discussions" are not privileged) (citation omitted); *Coorstek,

Inc. v. Reiber*, No. 08-cv-01133-KMT-CBS, 2010 WL 1332845, at *7 (D. Colo. Apr. 5, 2010) ("A

general description of the work performed by an attorney is not protected by the attorney-client privilege.").[7] While Colorado case law on this issue is somewhat scarce, the cases that have addressed the matter follow the approach taken by federal courts. *Guy*, 469 P.3d at 551 (collecting federal cases and noting "[o]f more significance here, the privilege ordinarily *does not encompass information about the subject matter of an attorney-client communication*. The disclosure must be of confidential portions of the privileged communications. This does not include the facts of the communication, the identity of the attorney, *the subject discussed*, and details of the meetings, which are not protected by the privilege.'") (cleaned up, emphasis added) (quoting *Roberts*, 97 F. Supp. 3d at 1252-53); *cf. Gresser*, 543 P.3d at 1083 ("[T]he court did not abuse its discretion by allowing the Gressers' counsel to ask the Banner Health employees about their meetings with Banner Health's counsel.").

Accordingly, the court finds that responding to the Written Discovery would not require General Star to divulge privileged information.

## C.     Work Product

General Star also insists that the Written Discovery seeks attorney work product shielded from discovery. Because this court has determined that the Written Discovery is relevant and does not seek privileged information, it is now General Star's burden to demonstrate that the information sought was prepared in anticipation of litigation. *Martin*, 150 F.R.D. at 172. If

---

[7] *Accord Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 545544, at *6 (D. Kan. Feb. 11, 2014) (collecting cases); *Kovacs*, 2006 WL 3054167, at *2; *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005); *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484-85 (D. Kan. 1997), *reconsideration granted in part*, 177 F.R.D. 491 (D. Kan. 1997).

General Star can make that showing, the HOA may still obtain General Star's responses if it demonstrates both a substantial need for the information and the inability to obtain substantially similar information by other means without undue hardship. *Id.* at 172-73.

### 1.    *Prepared in anticipation of litigation*

For a party to anticipate litigation, litigation need not be imminent but only "reasonably foreseeable." *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 WL 4016003, at *3 (D. Colo. Nov. 17, 2009); *see also Collardey v. All. for Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 982 (D. Colo. 2019) (noting that the work-product doctrine "is not confined to situations in which litigation is certain"). But even if litigation is reasonably foreseeable, documents do not constitute work product unless they were created or obtained with litigation in mind. On this, the ultimate inquiry goes to "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the *prospect* of litigation." *Martin*, 150 F.R.D. at 173 (quoting 8 Wright & Miller, Federal Practice & Procedure § 2024, at p. 198) (emphasis in original).

In sum, to constitute work product, (1) litigation must be reasonably foreseeable and (2) the document must have been created or acquired because a party expected litigation.

### a.    *When was litigation reasonably foreseeable?*

Assessing when a party could anticipate litigation is typically a fact-intensive determination that must be made on a case-by-case basis. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007) (holding that "the best way to determine whether a party's actions are in anticipation of litigation is a case-by-case analysis, considering the unique factual context of the given problem") (citation and internal quotation marks omitted). As noted

by courts in this District, making this determination in insurance cases "presents unique

challenges." *Menapace*, 2020 WL 6119962, at \*14.

The facts here illustrate the complexity of assessing when an insurance company could

have reasonably anticipated litigation. The HOA filed the Claim in November 2018, and in

March 2019, General Star denied it. More than a year later, the HOA issued its Demand Letter

accusing General Star of wrongfully denying coverage under the Policy and asserting that "it is

clear that General Star's conduct to this point has been unreasonable and in direct defiance of the

Claims Handling Standards set forth by the State of Colorado." Appendix at 25, 39. Around this

same time, the HOA requested that General Star execute the first tolling agreement.

In April 2020, General Star responded to the Demand Letter, stating that it was

"stand[ing] by its coverage determination." April 24, 2020 Letter at 2. Yet, General Star went on

to say that it would conduct an additional inspection of the Property and reserved the right to

request additional information or materials "necessary to its *further evaluation* of the Claim." *Id.*

at 2 (emphasis added). A month later, General Star wrote that "*it will further evaluate* [the Claim]

in strict accordance with the terms and conditions of the Policy . . . ." May 29, 2020 Letter at 2

(emphasis added). General Star then thanked the HOA for its "continued cooperation *in moving*

*this disputed claim toward resolution*." *Id.* at 2 (emphasis added). More than a year after that,

General Star wrote regarding its decision to solicit bids from contractors: "General Star is taking

this action to demonstrate the utmost good faith *as its investigation, evaluation, and adjustment*

*of the Claim moves toward a conclusion*." August 30, 2021 Letter at 2 (emphasis added). Then,

in October 2021 (more than two-and-a-half years after General Star had denied the Claim), it

conveyed that it was prepared to issue approximately $2 million to the HOA as payment for the

Claim—effectively reversing its previous decision to deny the Claim. October 8, 2021 Letter
at 2. General Star ended that Letter by reserving its right to modify its coverage position should
new information reveal the extent to which "each of the 2016, 2018, and 2019 storm events
referenced in [General Star's expert's evaluation] may have contributed to the conditions of
distress observed at [the Property]." *Id.* at 4.

General Star maintains that litigation was reasonably foreseeable no later than March or
April 2020. It emphasizes that, at that point in time, it had already denied the Claim, received the
Demand Letter, and agreed to a tolling agreement, the very purpose of which was to extend the
window for bringing suit. Motion at 17-19. The HOA counters that litigation was not foreseeable
until on or about April 29, 2022, when the parties failed to resolve their dispute among
themselves and agreed to pursue mediation. Response at 3. It highlights the facts which show
that General Star had renewed its investigation of the Claim and later paid the HOA for repairs to
the Property.

Weighing in General Star's favor is the fact that it issued a denial of the Claim in March
2019. Although there is no bright-line rule for when it is reasonable for an insurer to anticipate
litigation, the closest thing to such a rule is the date that a claim is denied. *See, e.g.*, *Century Sur.
Co. v. Smith*, No. 14-cv-00947-RM-MJW, 2014 WL 7666061, at *6 (D. Colo. Jan. 21, 2014)
("Ordinarily, the date a claim is denied is the most obvious point at which litigation becomes
imminent."). At the same time, the idea that General Star had denied the Claim with enduring
finality is belied by General Star's own statements in the Letters indicating that it continued to
investigate and evaluate the Claim. *See Menapace*, 2020 WL 6119962, at *18 ("Instead, it was
only after Defendant concluded its investigation and evaluation of the claim and issued the

October 4, 2019 letter that any litigation could reasonably have been anticipated."); *see also*

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, No. 1:13-cv-01316-JMS,

2015 WL 1013952, at *8 (S.D. Ind. Mar. 9, 2015) ("The reservation of rights letters and other

evidence indeed reflect that the parties appear to have been working together to determine

coverage during the periods these letters were sent, rather than anticipating litigation."). More

support for the conclusion that the Claim was not truly "denied" is the fact that General Star

obviously reversed its initial coverage position by paying out more than $3 million to the HOA.

The court is also not persuaded that the Demand Letter made litigation more than an

abstract prospect. In *Menapace*, the court rejected the insurer's argument that litigation was

foreseeable after the insurer received a demand letter that "(1) was sent by an attorney,

(2) requested a large amount of benefits—$500,000—without significant supporting

documentation, and (3) specifically mentioned proceeding to litigation if the parties did not

resolve the claim." 2020 WL 6119962, at *16 (internal quotation marks omitted). Given the

similarities between the Demand Letter here and the one in *Menapace*, this court does not

discern a meaningful basis to depart from the conclusion reached in that case. *See also Church*

*Mut. Ins. Co. v. Coutu*, No. 17-cv-00209-RM-NYW, 2018 WL 2388555, at *5 (D. Colo. May 25,

2018) (retaining attorney, even one with a "reputation" for being litigious, did not make litigation

reasonably foreseeable).

Neither is the HOA's request that the parties execute a tolling agreement definitive

evidence that litigation was likely. Cases on this issue are a mixed bag. *Compare Minebea Co. v.*

*Papst*, 229 F.R.D. 1, 4 (D.D.C. 2005) ("[D]ocuments created during the pendency of a tolling

agreement are generally not created 'in anticipation of litigation' and must be produced.");

*Indianapolis Airport Auth.*, 2015 WL 1013952, at *8-9 (holding it was not clearly erroneous to conclude that litigation was not foreseeable even though "the alternative to Travelers agreeing to toll the limitations was litigation," because the parties "continued to work collaboratively" afterward), *with F.D.I.C. v. Fid. & Deposit Co. of Md.*, No. 3:11-cv-19-RLY-WGH, 2013 WL 3989140, at *4 (S.D. Ind. Aug. 2, 2013) (recognizing that the existence of a tolling agreement is prima facie evidence that litigation was more than a "remote prospect" or "inchoate possibility") (citation omitted).

In the court's view, the circumstances of this case make it such that the HOA's requests for a tolling agreement did not make litigation foreseeable. The overarching purpose of a tolling agreement is to extend the statute of limitations and provide additional time before a party must file suit. In many instances—and seemingly so here—a tolling agreement affords the parties more time to resolve a dispute "informally" and avoids the need for those efforts to be cut short by filing suit for no reason other than to avoid the statute of limitations. Although the HOA's requests for a tolling agreement signaled that it sought to retain the ability to assert its legal claims at a future point in time, those requests for additional time also indicated that it was not necessarily eager to do so. By contrast, the parties' cooperation in adjusting the Claim—even if fraught and contentious at times—meant that litigation was not necessarily foreseeable until those efforts failed, and the parties reached an unbridgeable impasse. The parties apparently reached that point on or about April 29, 2022, when they collectively agreed to participate in mediation, which even the HOA concedes marked when the possibility of litigation became more than merely speculative.

In short, the court finds that litigation was reasonably foreseeable only after the parties'

renewed efforts to adjust the Claim failed and began to discuss mediation on or about April 29, 2022. Accordingly, the Letters, all of which came before that point, were not prepared in anticipation of litigation.

*b.*    *Were the Letters prepared with litigation in mind?*

Even if litigation were reasonably foreseeable in April 2020 or earlier, nothing in the Letters indicates that they were prepared because of the prospect of litigation. Tellingly, General Star has not argued that it would not have prepared the Letters were it not for the fact that it anticipated litigation. Moreover, nothing in the Letters indicates that they were prepared because General Star expected litigation, given that their contents are fundamentally tied to the adjusting of the Claim. It is apparent from the plain language of the Letters that they could have been sent at any point during General Star's adjustment of the Claim. *See Menapace*, 2020 WL 6119962, at *17 (stating that "the hope for *avoiding* litigation made at the commencement of the negotiation process for the claim" was not sufficient to demonstrate that a document was prepared because the insurer expected litigation) (emphasis in original).

The court therefore finds that the Letters were not prepared because General Star anticipated litigation.

**2.    Substantial need**

Finally, even if litigation were foreseeable in April 2020, and even if the Letters were prepared with litigation in mind, the court would still require General Star to respond to the Written Discovery because there is a substantial need for its answers to those inquiries. As discussed above, the ability to determine who was involved in adjusting the Claim is information central to the HOA's bad faith claims. The HOA thus has a substantial need to know whether Mr.

27

Holbrook authored or assisted in drafting the Letters. *See Curtis Park Grp.*, 2021 WL 4438037, at *7 ("Because [insurer's attorney] was heavily involved in drafting the denial letter, Curtis Park needs to understand his exact role[.]"). And the Written Discovery is the least obtrusive means of obtaining information concerning Mr. Holbrook's role with respect to the Letters. The only readily apparent alternative would be to order production of the Letters in their native format, an option that would almost certainly require additional in camera review and far more effort on General Star's part.

Thus, irrespective of the court's conclusion that the Letters do not constitute work product, the court would nevertheless find that General Star's answers to the Written Discovery would be required.

## II.    Claim File

The court now turns to the challenged redactions in the Claim File. The court will address each Entry in the chart appended to this Order. Here, the court analyzes several common issues illustrated in the redacted portions of the Claim File.

### A.    Attorney-Client Privilege

#### 1.    *Forwarding correspondence to counsel*

Many of the activity notes contain statements that correspondence or information was forwarded to counsel. Although the attorney-client privilege does protect "information given to the attorney to enable him to give sound and informed legal advice," *see Gordon*, 9 P.3d at 1123, the simple fact that an attorney was on one end of a communication does not mean that the privilege attaches. *See Hurtado*, 2011 WL 2533698, at *4 (citing *Nat'l Farmers Union*, 718 P.2d at 1049). Rather, as highlighted above, a communication is privileged when its disclosure "would

have a tendency to reveal the confidences of the client." *Sterling Const. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-cv-02224-MSK-MJW, 2011 WL 3903074, at *13 (D. Colo. Sept. 6, 2011) (quoting *In re Grand Jury Proc.*, 616 F.3d at 1182).

Courts in this District have consistently declined to apply the attorney-client privilege to materials that are administrative in nature. *See, e.g.*, *id.* (finding document was not privileged when it did "little more than memorialize that a transmission of information occurred."); *accord Murphy v. Schaible, Russo & Co., C.P.A'S, LLP*, No. 19-cv-02808-WJM-NYW, 2020 WL 12698584, at *3 (D. Colo. Jan. 7, 2020) ("[C]ommunications between attorneys and clients that are administrative or logistical in nature . . . are not protected by the privilege.") (citing *Sterling*, 2011 WL 3903074, at *14); *Olsen v. Owners Ins. Co.*, No. 18-cv-1665-RM-NYW, 2019 WL 2502201, at *5 (D. Colo. June 17, 2019) (holding client's email forwarding copy of the plaintiff's complaint to his attorney was not privileged because the client did not seek legal advice, and "[t]his communication is administrative in nature and is not subject to the attorney-client privilege"). The Tenth Circuit, applying federal law, similarly has found that "conduit information," i.e., the simple transmission of non-confidential information from an attorney to his or her client, is not privileged. *See In re Grand Jury Proc.*, 616 F.3d at 1183 ("The second category of questions requested Attorney # 1 to testify regarding information that he received from the government and then communicated to Appellant. These questions thus requested 'conduit' information—whether a third party's statement was passed along by the attorney to the client. Where questions only request information regarding communications where the attorney was acting as a 'conduit' for non-confidential information, the client may not invoke the attorney-client privilege. These questions did not request information regarding privileged legal

29

advice provided by the attorney to his client, nor would the questions tend, directly or indirectly, to require the attorney to reveal the substance of any legal confidence.") (cleaned up).

This court has thoroughly reviewed the unredacted version of the Claim File and finds that none of the relevant activity notes include specific requests for legal advice. At bottom, they are simple notations by Mr. Colucci that he sent certain materials (most often, correspondence from Mr. O'Driscoll, the HOA's public adjuster) to counsel, seemingly to keep them abreast of the latest developments regarding the Claim. Thus, requiring General Star to turn over these particular aspects of the Claim File would not reveal any request for, or provision of, specific legal advice, rendering the attorney-client privilege inapplicable.

### 2.    *Conversations with counsel*

In a similar vein, many redactions concern conversations between Mr. Collucci and counsel. Most of this information is not privileged. First, the simple recounting that Mr. Collucci spoke with counsel is not protected. *See Guy*, 469 P.3d at 551. Second, the majority of the relevant activity notes do not delve into details regarding any legal advice. With few exceptions, these activity notes furnish, at most, the general topics of calls between General Star and its counsel, which, again, are not privileged *See id.* at 551-52. Thus, any portion of the Claim File that merely reflects that Mr. Collucci spoke with counsel, or that simply conveys a general summary of a conversation in which counsel participated, is not privileged.

### 3.    *Preparation of the Letters and other correspondence to the HOA*

Several of the activity notes address General Star's preparation of the Letters. With these activity notes, too, nothing by way of substantive legal advice is discussed. Considered together with the fact that the underlying purpose of the Letters was General Star's adjusting of the Claim,

these aspects of the Claim File are not privileged. The court reaches the same conclusion for

activity notes describing General Star's preparation of other correspondence to the HOA. These

activity notes generally describe the preparation of correspondence, such as who was involved

and what was being considered during the drafting of the correspondence. These materials,

devoid of discussion of substantive legal issues, likewise are not privileged.

**B.    Work Product**

Having determined that litigation was not reasonably foreseeable until on or around the

time the parties agreed to mediation (April 29, 2022), the court notes that Entries 52 through 61

were the only activity notes created after that date. Consistent with the court's analysis above,

any activity note created before April 29, 2022, could not have been prepared in anticipation of

litigation. Furthermore, the court observes that the activity notes associated with Entries 7

through 51 are not geared toward litigation to any greater degree than the *unredacted* portions of

the Claim File. Thus, the court finds no basis to conclude that the statements and information

contained in the redacted portions of Entries 7 through 51 were created with litigation in mind.

Further, because General Star continued to adjust the Claim in April 2022, the HOA has a

substantial need for the information in the Claim File as it recounts General Star's handling of

the Claim to that date, including the materials in Entries 7 through 51. *See Stillwell v. Exec. Fund

Life Ins. Co.*, No. CIV. A. 89-A-245, 1989 WL 78159, at *5 (D. Colo. July 12, 1989) ("The

insurer's file may be plaintiff's only source of the information needed to prove his case. Stillwell

requires information contained in the file which relates to all phases of the processing of his

claim, including appeal."). For these reasons, the work-product doctrine is inapplicable to Entries

7 through 51.

### III.    The Letters

In its Response, the HOA asks that the Letters be produced in their native formats, including the underlying metadata. Response at 12. At this time, the court does not believe that such discovery is proportional to the needs of the case. Although the court has concluded that the Letters relate predominantly to adjusting and contain few substantive legal topics, the court believes it more prudent to assess this request for production after General Star provides responses to the Written Discovery and produces the portions of the Claim File as directed in this Order. Given that the production of the Letters in their native formats, with their metadata, would likely require additional in camera review, the court will not order the production of these materials until it is evident that doing so is the only means of obtaining the information for which the HOA is searching. Consequently, the HOA's request that the Letters be produced in their native formats, along with the associated metadata, is denied without prejudice.

## CONCLUSION

For the reasons above, the Motion for Protective Order (ECF No. 44) is **GRANTED in part and DENIED in part**. General Star shall provide its responses to the Written Discovery and produce the Claim File consistent with this Order. This Order shall be stayed for fourteen days or until the resolution of any objection thereto. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055774, at *4 (D. Colo. May 23, 2018).[8]

---

[8] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection

DATED: December 16, 2024              BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

**APPENDIX**

| Entry # | Date of Activity Note | Description and Court's Ruling |
|---------|----------------------|-------------------------------|
| 7 | April 17, 2020 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel for review and advice on handling. It notes that there was a conference call between Mr. Collucci, Mr. Thompson, and counsel regarding how to respond to Mr. O'Driscoll and the general plan for moving forward. The activity note also addresses the preparation of the April 24, 2020 Letter.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 8 | April 24, 2020 | <u>Description</u>: Indicates that correspondence was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 9 | April 30, 2020 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 10 | May 4, 2020 | <u>Description</u>: Notes that counsel would discuss correspondence from Mr. O'Driscoll with expert/consultant (Nelson).<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 11 | June 23, 2020 | <u>Description</u>: Notes that Mr. Collucci would set up a call between an expert and counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 12 | June 30, 2020 | <u>Description</u>: Notes that Mr. Collucci had a call with counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 13 | August 27, 2020 | <u>Description</u>: Notes a conversation between Mr. Collucci and counsel and the plans for preparing a response to Mr. O'Driscoll. Indicates that correspondence was forwarded to counsel. |

| | | |
|---|---|---|
| | | <u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 14 | October 29, 2020 | <u>Description</u>: Notes a conversation between Mr. Collucci and counsel regarding the Claim. Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel. Lays out General Star's potential next steps.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 15 | November 4, 2020 | <u>Description</u>: Notes a conversation between Mr. Collucci and counsel regarding the Claim.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 16 | March 29, 2021 | <u>Description</u>: Notes actions by counsel regarding correspondence from Mr. O'Driscoll.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 17 | April 12, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 18 | April 19, 2021 | <u>Description</u>: Notes a conversation between Mr. Collucci and counsel regarding the Claim and correspondence from Mr. O'Driscoll.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 19 | April 20, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |

| 20 | April 27, 2021 | **Description**: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel. Notes General Star's plans for response.<br><br>**Court's Ruling**: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
|----|------|------|
| 21 | May 4, 2021 | **Description**: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br>**Court's Ruling**: This information is discoverable. |
| 22 | May 11, 2021 | **Description**: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br>**Court's Ruling**: This information is discoverable. |
| 23 | May 21, 2021 | **Description**: Notes a conversation between Messrs. Collucci, Thompson, and counsel. Indicates that information was forwarded to Mr. Thompson and counsel for unspecified advice on how to communicate with Mr. O'Driscoll.<br><br>**Court's Ruling**: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 24 | May 25, 2021 | **Description**: Notes Mr. Collucci's consideration of advance payment and discussions with Mr. Thompson, counsel, and RMC regarding same.<br><br>**Court's Ruling**: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 25 | May 25, 2021 | **Description**: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel and possible uses of that correspondence.<br><br>**Court's Ruling**: This information is discoverable. |
| 26 | June 3, 2021 | **Description**: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br>**Court's Ruling**: This information is discoverable. |
| 27 | June 11, | **Description**: Indicates investigation by counsel into a legal issue. |

| | 2021 | |
|---|---|---|
| | | <u>Court's Ruling</u>: This information is **_not_** discoverable. The redacted information is not relevant. Moreover, it is privileged because it concerns a specific request for legal advice. |
| 28 | June 15, 2021 | <u>Description</u>: Notes discussion between Mr. Collucci, counsel, and others at General Star regarding advance payment. Describes the outcome of legal research and the forwarding of those conclusions to the relevant departments at General Star. Notes discussion between Mr. Collucci and counsel regarding an associated claim and response to Mr. O'Driscoll.<br><br><u>Court's Ruling</u>: The court finds that the portion of the activity note concerning a legal determination made by General Star's counsel is privileged and, therefore, the first three redacted sentences of the activity note are **_not_** discoverable.<br><br>The remaining portions of the activity note discussing an associated claim and General Star's response to Mr. O'Driscoll, however, are subject to discovery because they do not reveal the substance of any legal advice. |
| 29 | July 8, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 30 | August 11, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 32 | August 27, 2021 | <u>Description</u>: Notes associated claim. Notes email between Mr. Collucci and counsel regarding correspondence with Mr. O'Driscoll. Notes discussion between Mr. Collucci and counsel regarding contractor bids.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 33 | September 29, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |

| 34 | October 5, 2021 | <u>Description</u>: Notes conversation between Mr. Collucci, counsel, and management regarding payment, preparing a response to Mr. O'Driscoll (October 8, 2021 Letter), the contents of the response, and general plans for reaching an agreed final claim.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. Further, the contents of the response were already revealed when General Star sent the October 8, 2021 Letter. |
|---|---|---|
| 35 | October 6, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel and describes the preparation of the October 8, 2021 Letter.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 36 | October 8, 2021 | <u>Description</u>: Describes the preparation of the October 8, 2021 Letter. Indicates that counsel was notified of plans for payment.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 37 | October 8, 2021 | <u>Description</u>: Indicates that counsel and management were advised of payment and response delivery.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 40 | October 21, 2021 | <u>Description</u>: Notes conversation between Mr. Collucci, counsel, and management regarding the Claim.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 41 | November 5, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 42 | December 10, 2021 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |

| 43 | January 7, 2022 | <u>Description</u>: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel and notes preparation of a response.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
|----|----|----|
| 44 | January 19, 2022 | <u>Description</u>: Describes the preparation of a response to Mr. O'Driscoll.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 45 | January 20, 2022 | <u>Description</u>: Indicates that correspondence from RMC was forwarded to counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 46 | February 16, 2022 | <u>Description</u>: Notes call between Mr. Collucci, counsel, and management regarding a discussion Mr. Thompson had with Mr. O'Driscoll and General Star's plans moving forward.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 47 | March 4, 2022 | <u>Description</u>: Indicates that correspondence from RMC was forwarded to Mr. Thompson and counsel.<br><br><u>Court's Ruling</u>: This information is discoverable. |
| 48 | March 15, 2022 | <u>Description</u>: Describes the preparation of the March 15, 2022 Letter.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |
| 49 | April 7, 2022 | <u>Description</u>: Describes plans to discuss with counsel how to communicate with Mr. O'Driscoll.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. |

| | | |
|---|---|---|
| 50 | April 18, 2022 | <u>Description</u>: Notes that payment was made and the amount of the indemnity reserve. Describes the preparation of the April 21, 2022 Letter.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. Additionally, there is no indication that this activity note was created in anticipation of litigation. *See Colorado Mills*, 2013 WL 1340649, at *7-8 (noting the relevance and discoverability of information surrounding indemnity reserves). |
| 51 | April 21, 2022 | <u>Description</u>: Describes the preparation of the April 21, 2022 Letter.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. Additionally, there is no indication that this activity note was created in anticipation of litigation because (1) the parties did not agree to mediation until on or about April 29, 2022, and (2) the April 21, 2022 Letter was fundamentally adjusting in nature. |
| 52 | April 29, 2022 | <u>Description</u>: Notes Mr. Collucci's plan to have a discussion with counsel and management.<br><br><u>Court's Ruling</u>: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. Additionally, there is no indication that this activity note was created in anticipation of litigation, given that it is practically identical to numerous activity notes that came before the parties agreed to mediation. |
| 53 | June 3, 2022 | <u>Description</u>: Describes preparation by Messrs. Collucci, Thompson, counsel, and RMC for mediation.<br><br><u>Court's Ruling</u>: This information is ***not*** discoverable. The redacted material is work product since it describes—albeit very generally—General Star's preparation for mediation. |
| 54 | June 14, 2022 | <u>Description</u>: Describes preparation by Messrs. Collucci, Thompson, counsel, and RMC for mediation.<br><br><u>Court's Ruling</u>: This information is ***not*** discoverable. The redacted material is work product since it describes General Star's preparation for mediation. |

| 55 | June 14, 2022 | **Description**: Indicates that correspondence from the HOA's counsel was forwarded to counsel.<br><br>**Court's Ruling**: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. Additionally, there is no indication that this activity note was created in anticipation of litigation, given that it is practically identical to numerous activity notes that came before the parties agreed to mediation. |
|----|----|----|
| 56 | June 14, 2022 | **Description**: Indicates that correspondence from Mr. O'Driscoll was forwarded to counsel and plans for reviewing correspondence.<br><br>**Court's Ruling**: This information is discoverable. Nothing in the activity note reveals the substance of any request for or provision of legal advice. Additionally, there is no indication that this activity note was created in anticipation of litigation, given that it is practically identical to numerous activity notes that came before the parties agreed to mediation. |
| 57 | June 20, 2022 | **Description**: Describes the preparation of a legal agreement.<br><br>**Court's Ruling**: This information is ***not*** discoverable. The redacted material is not relevant. Moreover, it is privileged because it concerns a specific request for or provision of legal advice. |
| 58 | July 7, 2022 | **Description**: Describes an email from counsel regarding information learned during a conversation with the HOA's counsel. Describes General Star's next steps.<br><br>**Court's Ruling**: This information is ***not*** discoverable. The redacted material is properly protected as work product as it contains counsel's mental impressions regarding his conversation with the HOA's counsel. |
| 59 | September 23, 2022 | **Description**: Describes how the associated claim is being handled regarding litigation.<br><br>**Court's Ruling**: This information is ***not*** discoverable. The redacted material is irrelevant, but it is also work product because it describes General Star's litigation strategy. |
| 60 | November 2, 2022 | **Description**: Describes an email from counsel regarding the mediator's availability and the potential dates for the parties' mediation. |

| | | |
|---|---|---|
| | | <u>Court's Ruling</u>: This information is ***not*** discoverable. The redacted material is not relevant. |
| 61 | November 14, 2022 | <u>Description</u>: Describes correspondence regarding ongoing litigation and potential options for reaching a settlement.<br><br><u>Court's Ruling</u>: This information is ***not*** discoverable. The redacted material is not relevant. Additionally, the material is work product because it describes General Star's litigation strategy. |