IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

LAKESHORE VILLAGE HOMEOWNERS §
ASSOCIATION, §
§
§ CIV. A. NO. 1:22-CV-02046
Plaintiff, §
§
v. §
§
GENERAL STAR INDEMNITY COMPANY, § JURY TRIAL DEMANDED
§
Defendant. §

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant General Star Indemnity Company ("GSIC") files this Response in Opposition

to Plaintiff's Motion for Partial Summary Judgment [ECF No. 80] and respectfully states:

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Responding to paragraph 1 of Plaintiff's Statement of Undisputed Material Facts

("SOMF"), GSIC admits it issued policy number IAG967350, with effective dates of coverage

from May 5, 2018, through May 5, 2019 ("Policy"). (*See* Plf's Ex. 28 [ECF 80-28] (Policy) at 1-2

of 99.)

2.      Responding to paragraph 2 of Plaintiff's SOMF, GSIC admits the Policy provided

insurance coverage for certain property located at 4385 South Balsam Street, Littleton, Colorado

80123 ("Property"), subject to the terms, conditions, limitations, exclusions, deductibles, and

endorsements set forth in the Policy. (*See* Plf's Ex. 28 [ECF 80-28] (Policy) at 9 of 99.)

3.      Responding to paragraph 3 of Plaintiff's SOMF, GSIC admits the Policy was in

effect on August 14, 2018, but denies the remaining allegations in paragraph 3 of Plaintiff's SOMF.

Based on the report issued by GSIC's originally retained roof consultant, Joseph Shahid of Applied

Building Sciences ("ABS"), in February 2019 ("ABS Report"), the Property was likely subjected

1

to hail events on seven separate occasions during the roughly five-year period between "between 2014 (the approximate date of when the [Property's] shingles were installed) and January 2019 (when ABS reviewed the roofs)." *See* Plf's Ex. 2 [ECF 80-2] (ABS Report) at 17 of 21; *see also id.* at 19 of 21.) Upon inspecting the Property, ABS observed "[m]inor granule loss . . . on all roofs and slopes" of the Property, "[t]he frequency of [which was] consistent with the approximate seven hail events that ha[d] occurred in the vicinity of the property." (*See id.* at 17 of 21.) Further, as set forth in the Hail Distress Evaluation issued by GSIC's subsequently second retained engineer/roofing consultant, Todd Martin, P.E. of Nelson Forensics, on November 16, 2020, Nelson Forensics identified evidence of certain distress at the Insured Location consistent with hail impact, which it concluded was "primarily the result of storm events in 2016 and 2018" – specifically, storm events occurring in June 2016, July 2016, May 2018, June 2018, and August 2018. (*See* Plf's Ex. 18 [ECF 80-18] (Nelson Report) at 23-25 of 35.) Nelson Forensics further concluded that a "storm event in July 2019 also likely contributed to the observed conditions." (*See id.* at 24-25 of 35.) But, with respect to these various dates, Nelson Forensics ultimately concluded that "the contribution from any one storm event [was] undetermined," noting that "[h]istorical information regarding the conditions of the subject roofs after each storm event [was] necessary in order to accurately determine the contribution of each storm event." (*See id.* at 24 of 35.)[1]

    4.   Admitted.

    5.   Admitted.

---

[1] In further response to paragraph 3 of Plaintiff's SOMF Defendant also disputes and denies that Plaintiff duly and timely notified GSIC of its loss. Plaintiff (acting by and through its public adjuster, Derek O'Driscoll of Impact Claims Services) formally reported the Claim to GSIC via an email received by General Star on November 13, 2018 – nearly three months after the reported date of loss.

6.	GSIC disputes and denies the allegations in paragraph 6 of Plaintiff's SOMF, except to state that the Policy and the deposition excerpt(s) referenced paragraph 6 speaks for themselves as to their respective substance and contents.

7.	Responding to paragraph 7 of Plaintiff's SOMF, GSIC admits it retained the services of a third-party consultant/engineer, Mr. Shahid of ABS, who investigated the loss and issued the ABS Report on or February 5, 2019. GSIC disputes and denies the remainder of the allegations in paragraph 7 of Plaintiff's SOMF, which purport to summarize the substance of the ABS Report. In this regard, GSIC affirmatively states that the ABS Report speaks for itself as to its substance and contents, including the observations, findings, and conclusions set forth therein. (*See generally* Plf's Ex. 2 [ECF 80-2] (ABS Report).)

8.	GSIC disputes and denies the allegations in paragraph 8 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

9.	Admitted.

10.	Admitted.

11.	Admitted.

12.	Admitted.

13.	GSIC disputes and denies the allegations in paragraph 13 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

14.	GSIC disputes and denies the allegations in paragraph 14 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

15.    GSIC disputes and denies the allegations in paragraph 15 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

16.    GSIC disputes and denies the allegations in paragraph 16 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

17.    GSIC disputes and denies the allegations in paragraph 17 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

18.    GSIC disputes and denies the allegations in paragraph 18 of Plaintiff's SOMF. As evidenced by Plaintiff's Motion itself, GSIC sent numerous Claim-related letters and correspondence to O'Driscoll after July 4, 2019.

19.    Responding to paragraph 19 of Plaintiff's SOMF, Defendant disputes and denies Plaintiff's characterization of Colucci's deposition testimony and, in so doing, asserts that the twelve-page deposition excerpt cited as purported support for paragraph 19 of Plaintiff's SOMF speaks for itself as to Colucci's actual deposition testimony.

20.    Responding to paragraph 20 of Plaintiff's SOMF, GSIC admits it received Claim-related correspondence from O'Driscoll on or about March 19, 2020, including a Sworn Statement in Proof of Loss("SSPOL"). GSIC disputes and denies, however, that the materials accompanying the correspondence and related SSPOL, none of which are included in the summary judgment record, are "authoritative materials" (as claimed by Plaintiff).

21.    Admitted (as construed by GSIC)

22.    Admitted.

4

23.    Responding to paragraph 20 of Plaintiff's SOMF, GSIC admits it sent Claim-related

correspondence to Plaintiff on April 24, 2020. GSIC further admits its letter stated:

> Based on the information made available to General Star to date,
> General Star stands by its coverage determination, which as noted
> in our coverage determination letters dated March 13, 2019 and June
> 28, 2019 is supported by and based upon the work product of an
> independent, third-party roof consultant[, Mr. Shahid of ABS].…
>
> Having said that, and in furtherance of our good-faith effort to
> evaluate the existing dispute over the Insured's Claim, including the
> additional information submitted in your recent correspondence [of
> March 19, 2020], General Star has retained a second engineer/roof
> consultant – Todd Martin, P.E. of Nelson Forensics, LLC – to
> inspect and evaluate the physical condition of the Insured Location.

(Plf's Ex. 16 [ECF 80-16] (GSIC Letter – 04.24.20) at 2-3). GSIC denies the remainder of the

allegations in paragraph 20 of Plaintiff's SOMF, except to state that its letter dated April 24, 2020

speaks for itself as to its substance and contents.

24.    Responding to paragraph 24 of Plaintiff's SOMF, GSIC admits it received

correspondence from O'Driscoll on or about May 19, 2020, which—without admitting or

conceding the veracity or accuracy of any statement(s) therein—GSIC asserts speaks for itself as

to its substance and contents. Responding further to paragraph 24 of Plaintiff's SOMF, GSIC

denies it made no response to O'Driscoll's correspondence dated May 19, 2020. (*See* GSIC's Ex.

4 (GSIC Letter – 05.29.20).)

25.    GSIC disputes and denies the allegations in paragraph 25 of Plaintiff's SOMF,

except to state that the report referenced therein speaks for itself as to its substance and contents.

26.    GSIC disputes and denies the allegations in paragraph 26 of Plaintiff's SOMF,

except to state that the Claim-related correspondence referenced therein speaks for itself as to its

substance and contents.

27.     GSIC disputes and denies the allegations in paragraph 27 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

28.     GSIC disputes and denies the allegations in paragraph 28 of Plaintiff's SOMF, except to state that the Claim-related correspondence referenced therein speaks for itself as to its substance and contents.

29.     Admitted.

30.     Responding to paragraph 30 of Plaintiff's SOMF, GSIC admits Colucci requested that Holberton revise his depreciation to reflect the age of the Property's roofs and other exterior components as of the date of loss, but denies Plaintiff's insinuation that said request constitutes a concession of (purported) delay in GSIC's handling of the Claim. Colucci's request tracked the plain language of the Policy, which states that ACV (including related calculation(s) and deduction(s) for depreciation shall be determined as of the date of loss). (*See* Plf's Ex. 28 [ECF 80-28] (Policy).)

31.     Admitted. By way of further response, GSIC notes this ACV payment in the net amount of $2,030,868.16, which was based on the highest of three competitive bids obtained from local contractors, was in addition to the $1,000,000.00 advance made by GSIC on or about June 15, 2021, which GSIC was under no obligation to make under the Policy. (*See* GSIC's Ex. 2 (Thompson Depo.) 89:24-90.5.)

32.     Admitted.

33.     Admitted.

34.     GSIC disputes and denies the allegations in paragraph 34 of Plaintiff's SOMF, except to state that the deposition excerpt(s) referenced therein speak for themselves itself as to their substance and contents.

35.     GSIC disputes and denies the allegations in paragraph 35, which misstate the terms and conditions of the Policy. (*See also* Plf's Ex. 28 [ECF 80-28] (Policy) at 75 of 99.)

36.     GSIC disputes and denies the allegations in paragraph 36 of Plaintiff's SOMF, which references (purported) deposition testimony from Colucci that is not included in the summary judgment record and misrepresents the testimony of Thompson, which addressed the Policy's ACV limitation for roofs older than twelve years in age—a provision which GSIC has never contended applies to the Claim. (*See* Plf's Ex. 1 [ECF 80-1] (Thompson Depo.) 34:23-27:11; *see also* Plf's Ex. 28 [ECF 80-28] (Policy) at 75 of 99.)

37.     GSIC disputes and denies the allegation in paragraph 37 of Plaintiff's SOMF on the basis that it misstates and/or mischaracterizes Thompson's deposition testimony. By way of further response, GSIC asserts that the cited excerpt of Thompson's deposition testimony speaks for itself as to its substance.

38.     GSIC disputes and denies the allegations in paragraph 389 of Plaintiff's SOMF on the basis that such allegations are argumentative, conclusory, and not directly supported by reference or citation to any evidence in the summary judgment record that may be presented in an admissible form at trial.

39.     GSIC disputes and denies the allegations in paragraph 39 of Plaintiff's SOMF on the basis that such allegations are argumentative, conclusory, and not directly supported by reference or citation to any evidence in the summary judgment record that may be presented in an admissible form at trial.

## ARGUMENT AND AUTHORITY

**A. Plaintiff is not entitled to summary judgment on its breach of contract claim, because the evidence fails to establish coverage for Plaintiff's claimed loss(es) under the Policy.**

Setting aside (but without waiving) the issue of whether and to what extent the Policy provides coverage for nonfunctional damage to the Property's roofs and other exterior components, Plaintiff's Motion fails for the simple reason that Plaintiff has not established beyond peradventure that the Property sustained damage as the result of a storm occurring on Plaintiff's reported date of loss (*i.e.*, August 14, 2018) as opposed to the several other documented storm events falling outside the twelve-month term of the Policy under which it seeks coverage.

40.     The Policy at issue provided coverage for direct physical loss or damage sustained by the Property (subject to the terms and conditions set forth in the Policy) during the twelve-month period commencing on May 5, 2018 and ending on May 5, 2019 ("Policy Period"). (*See* Plf's Ex. 28 [ECF 80-28] (Policy) at 1-2 of 99.) Accordingly, to establish coverage under the Policy and obtain summary judgment on its claim for breach of contract, Plaintiff must conclusively prove (among other matters) that the hail-related distress made the basis of its storm-damage Claim occurred during the Policy's twelve-month coverage term.[2]

But here, the summary judgment record falls short of conclusively establishing that Plaintiff's claimed property damage occurred on its reported date of loss (*i.e.*, August 14, 2018) or any other date within the Policy Period. To the contrary, the summary judgment evidence—which (in combination) references eight separate storm events, four of which fall outside the Policy's

---

[2] "[T]he elements [of] a breach of an insurance contract claim in Colorado are (1) existence of a contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform by defendant; and (4) damages to plaintiff." *Vinnedge v. Owners Ins. Co.*, 542 F.Supp.3d 1145, 1151 (D. Colo. 2021). Within this four-element framework, Colorado courts require an insured to establish that its claimed loss falls within the policy's coverage. *See, e.g., Wagner v. Am. Family Ins. Co.*, 968 F.Supp.2d 1100, 1104 (D. Colo. 2013) (noting that insured must establish coverage under policy to prove breach of contract in first-party property insurance dispute).

twelve-month coverage term—is wholly inconclusive as to the date (or dates) on which the hail-related distress made the basis of Plaintiff's Claim occurred.

For example, in its report dated February 5, 2019, which referenced and relied upon several authoritative and peer-reviewed engineering publications,[3] GSIC's originally-retained engineer/roof consultant (ABS) identified two general categories of hail-related distress to the Property's roofs. More specifically, ABS observed "[m]inor granule loss … on all roofs and slopes" of the Property. (Plf's Ex. 2 [ECF 80-2] (ABS Report) at 17 of 21). As determined by ABS, these instances of minor granule loss were "consistent with the approximate seven hail events that ha[d] occurred in the vicinity of the property" during the roughly five-year period "between 2014 (the approximate date of when the [Property's] shingles were installed) and January 2019 (when ABS reviewed the roofs)."[4] (*Id.*). ABS also observed "locations where the granule loss was larger and the shingles were fractured (typically larger than 1½ inches in width)" (*id.* at 18 of 21), which—as determined by ABS—"correlate[d] with the larger hail sizes estimated to have impacted [the Property] during a July 28, 2016 hail event," a date nearly two years before the Policy Period. (*Id.* at 19 of 21.)

Thereafter, in or about April 2020, as part of GSIC's good-faith effort to evaluate the parties' dispute over Plaintiff's storm-damage Claim, GSIC retained a second independent engineer/roof consultant – Nelson Forensics, LLC – to inspect and evaluate the physical condition of the Property's roofs and other exterior components. (Plf's Ex. 16 [ECF 80-16] (GSIC Letter – 04.24.20) at 2-3). As set forth in its Hail Distress Evaluation dated November 16, 2020, Nelson

---

[3] *See, e.g.,* Plf's Ex. 2 [ECF 80-2] (ABS Report) at 3 of 21 n.1-5.

[4] Notably, at least three of the seven storm events identified by ABS fell outside the Policy's twelve-month coverage period. (*See* Plf's Ex. 2 [ECF 80-2] (ABS Report) at 19 of 21).

Forensics identified evidence of certain distress at the Property consistent with hail impact, which

it concluded was "primarily the result of storm events in 2016 and 2018." (*See* Plf's Ex. 18 [ECF

80-18] (Nelson Report) at 23-25 of 35.) It further concluded that a "storm event in July 2019 also

likely contributed to the observed conditions." (*See id.* at 24-25 of 35.) But, in attempting to

identify a date (or dates) certain for the observed distress, Nelson Forensics ultimately stated:

> [T]he contribution from any one storm event is undetermined.
> Historical information regarding the conditions of the subject roofs
> and exteriors after each storm event is necessary in order to
> accurately determine the contribution of each storm event.

(*See id.* at 24 of 35.)

In further attempts to determine the extent to which each of the four storm events

referenced in Nelson Forensics' Hail Distress Evaluation may have caused or contributed to the

conditions of distress observed at the Property, GSIC retained a forensic meteorologist – Lee E.

Branscome, Ph.D of Climatological Consulting Corporation ("CCC") – to analyze the historical

occurrence of hailstorms at the Property, including a review of the weather conditions existing at

or near the Property on each of the 2016, 2018, and 2019 dates referenced in Nelson Forensics'

Hail Distress Evaluation. (*See* Plfs' Ex. 21 [ECF 80-21] (GSIC Letter – 05.05.21) at 21-2 of 3; *see

also* GSIC Ex. 1 (CCC Report) at 1.) In so doing, CCC concluded the most probable maximum

hail size(s) at the Property during each of the four storm events referenced in Nelson Forensics'

Hail Distress Evaluation were as follows:

| Date | Maximum Hail Size (± 0.25") |
|------|------------------------------|
| July 28, 2016 | 1.00" |
| June 19, 2018 | 1.25" |
| August 14, 2018 | 1.00" |

| July 4, 2019 | 1.50" |
|---|---|

(*See* GSIC Ex. 1 (CCC Report) at 6.) In short, much like the report issued by Nelson Forensics in November 2020, CCC's work product failed to yield conclusive findings regarding the extent to which each of the storm events referenced in Nelson Forensics' Hail Distress Evaluation may have caused or contributed to the conditions of distress observed at the Property.

Faced with inconclusive data regarding the date (or dates) on which the distress identified in Nelson Forensics' Hail Distress Evaluation occurred, on May 5, 2021, GSIC advised Plaintiff that it would be accepting coverage for all such distress (regardless of date sustained). (*See generally* Plfs' Ex. 21 [ECF 80-21] (GSIC Letter – 05.05.21).) GSIC did so as an act of utmost good faith and in efforts to move Plaintiff's disputed Claim toward a potential resolution – not because any credible information then available to GSIC (including the reports issued by Nelson Forensics and CCC) established coverage under the Policy. (*See id.*; *see also* GSIC Ex. 2 (Thompson Depo.) at 156:3 – 157:22; GSIC Ex. 3 (Colucci Depo.) at 243:12-145:4 and 260:20 – 261:21.) Indeed, in advising Plaintiff of its good-faith acceptance of coverage, GSIC expressly reserved all rights under the Policy and at law, including (without limitation) its "right to alter, amend, supplement, or modify its position regarding coverage as necessary upon receipt of . . . any information that might allow General Star or its retained consultants to determine the extent to which each of the 2016, 2018, and 2019 storm events referenced in Nelson Forensics' Hail Distress Evaluation may have contributed to the conditions of distress observed at the Insured Location."[5] (Plfs' Ex. 21 [ECF 80-21] (GSIC Letter – 05.05.21) at 2-3 of 3.)

---

[5] GSIC included substantially similar language in each of its subsequent Claim payment letters to Plaintiffs. (*See, e.g.,* Plf's Ex. 25 [ECF 80-25] (GSIC Letter – 10.08.21); Plf's Ex. 265 [ECF 80-26] (GSIC Letter – 04.21.22).)

Simply put, the summary judgment evidence fails to conclusively establish that Plaintiff's

claimed loss(es) occurred during the applicable Policy Period and, therefore, fails to establish

Plaintiff's entitlement to coverage under the Policy. Rather, as set forth above, the summary

judgment evidence—including the reports issued by ABS, Nelson Forensics, and CCC—

references eight separate storm events that may have impacted the Property, four of which occurred

outside the Policy's coverage period, thus presenting material issue(s) of fact for resolution by the

jury. And, because Plaintiff has failed to establish an entitlement to coverage under the Policy as a

matter of law, it likewise has failed to establish a right to summary judgment on its claim for

alleged breach of the Policy.[6] The fact that GSIC—as an act of good faith and in an attempt to

resolve Plaintiff's disputed Claim—ultimately agreed to accept coverage for the hail-related

distress identified in Nelson Forensics' Hail Distress Evaluation (regardless of date sustained),

under a full and complete reservation of rights, is of no import here, and the Court should reject

any effort by Plaintiff to bootstrap GSIC's good-faith effort at compromise into an affirmative

finding of contractual liability.

**B. <u>Plaintiff is not entitled to summary judgment on its for alleged violation(s) of Colorado Revised Statute § 10-3-1115.</u>**

Plaintiff also seeks summary judgment on its claim for alleged violation(s) of Colorado

Revised Statute § 10-3-1115. To prevail on its statutory claim under § 10-3-1115, Plaintiff must

---

[6] *See*, *e.g., York v. Safeco Ins. Co. of Am*, 540 F.Supp.3d 1049, 1056-57 (D. Colo. 2021) (entering summary judgment for insurer where insured failed to create issue of material as to whether claimed loss occurred during applicable policy period); *Nesavich v. Auto-Owners Ins. Co.*, No. 16-CV-01493-PAB-STV, 2018 WL 3729513, at *6 (D. Colo. Aug. 6, 2018) (entering summary judgment for insurer where the evidence would have required a jury to impermissibly speculate that hailstorm in question caused alleged damage); *cf. Hoang v. Assurance Co. of America*, 149 P.3d 798 (Colo. 2007) (holding that policy language requiring damage to occur during the policy period is unambiguous and creates a clear temporal limitation on coverage).

Plaintiff's claim for breach of contract also fails because the summary judgment record is devoid of any evidence that GSIC's alleged breach of the Policy caused Plaintiff any claimed damage for which it has not already been paid – a necessary element of Plaintiff's cause of action for breach of contract. Indeed, in its Motion, Plaintiff has not alleged (let alone established) that it is entitled to further and additional Policy proceeds at this time.

establish: (a) insurance benefits were owed to Plaintiff; and (b) GSIC delayed or denied payment

of those benefits without a reasonable basis. *See* Colo. Rev. Stat. §§ 10-3-1115(1)(a). Accordingly,

as a threshold to Plaintiff's claimed right of recover under § 10-3-1115, Plaintiff must prove an

entitlement to benefits under the Policy. *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-CV-00912-

MJW, 2015 WL 4035567, at \*6 (D. Colo. June 29, 2015), *aff'd sub nom. Sable Cove Condo. Ass'n*

*v. Owners Ins. Co.*, 668 F. App'x 847 (10th Cir. 2016); *see also Walker v. State Farm Fire &*

*Casualty Company*, 2017 WL 1386341, at \*8 (D. Colo. Feb. 23, 2017).

But, as set forth above, Plaintiff has failed to conclusively establish that its claimed losses

occurred during the applicable Policy Period and, by extension, failed to establish its entitlement

to coverage under the Policy. And, because Plaintiff has failed to conclusively establish an

entitlement to coverage under the Policy, its claim for statutory bad faith necessarily fails. *See*

*MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir.

2009); *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018), *aff'd,* 814

Fed.Appx. 408 (10th Cir. 2020).

Even if the summary judgment evidence established coverage for Plaintiff's Claim, which

it does not, Plaintiff would not be entitled to summary judgment on its claim(s) for alleged

violation(s) of § 10-3-1115. As set forth above, GSIC's initial coverage position (as set forth in its

letters dated March 13, 2019 and June 28, 2019) was based on GSIC's reasonable reliance on the

work product of an independent, disinterested, and competent engineer/consultant (ABS). When

Plaintiff challenged GSIC's coverage position, as an act of good faith, GSIC retained the services

of not only a second engineer (Nelson Forensics), but also a forensic meteorologist (CCC), to

provide further and additional professional services in connection with GSIC's evaluation of

Plaintiff's claimed loss. And, when the work of these additional consultants failed to yield

conclusive findings regarding the date (or dates) on which the hail-related distress made the basis
of Plaintiff's Claim occurred, in yet another act of good faith, GSIC agreed to accept coverage for
Plaintiff's claimed loss (regardless of date sustained) and, based on the highest of three competitive
contractor bids, paid Plaintiff more than $3,000,000.00 on an ACV basis. These facts do not merely
create a fact issue as to Plaintiff's claim(s) of unreasonable delay and/or denial, they affirmatively
establish that GSIC investigated and handled the Claim in accordance with the Policy and
applicable law.

## CONCLUSION

For the foregoing reasons, GSIC respectfully request that this Honorable Court: (a) deny
Plaintiff's Motion for Partial Summary Judgment in its entirety; and (b) grant GSIC such further
and additional relief to which it may be entitled.

Dated: February 26, 2026

Respectfully submitted,

**ZELLE LLP**

By: _James W. Holbrook, III_
  Jennifer L. Gibbs
  jgibbs@zellelaw.com
  James W. Holbrook, III
  jholbrook@zellelaw.com

901 Main Street, Suite 4000
Dallas, TX 75202-3975
Telephone: 241-742-3000
Facsimile: 214-760-8994

**COUNSEL FOR DEFENDANT**

14

## CERTIFICATE OF SERVICE

I hereby certify that, on February 26, 2026 I served the foregoing: (a) via CM/ECF on Plaintiff's counsel of record, Christopher Mammel, cmammel@merlinlawgroup.com and tchensee@merlinlawgroup.com.

 /s/ James W. Holbrook, III
James W. Holbrook, III